

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-23-01067-CV

**IN RE MESILLA VALLEY TRANSPORTATION** and Robert Stowbridge

Original Mandamus Proceeding[1]

| | |
|---|---|
| Opinion by: | Lori I. Valenzuela, Justice |
| Sitting: | Irene Rios, Justice |
| | Beth Watkins, Justice |
| | Lori I. Valenzuela, Justice |

Delivered and Filed: May 8, 2024

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In the underlying proceeding, real party in interest John Rudd sued relators Mesilla Valley Transportation ("MVT") and Robert Stowbridge for injuries he allegedly received as a result of a vehicle collision. During discovery, Rudd requested information about lawsuits involving MVT for the past ten years and requested access to Stowbridge's cell phone to retrieve data for four hours before and around the time of the collision. Over MVT and Stowbridge's objections, the trial court compelled responses. In this original proceeding, MVT and Stowbridge assert the trial court's order amounts to a clear abuse of discretion. We conditionally grant mandamus relief.

---

[1] This proceeding arises out of Cause No. 2022-CI-17679, styled *John Rudd vs. Mesilla Valley Transportation and Robert Stowbridge*, pending in the 288th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.

## BACKGROUND

On July 12, 2021, Stowbridge was driving a tractor-trailer for MVT when he changed lanes, and a collision occurred with Rudd's vehicle. Rudd sued MVT and Stowbridge for negligence and gross negligence, asserting, among other things, that Stowbridge was distracted by his cell phone while driving. During discovery, Rudd requested responsive documents and interrogatory answers on a variety of topics. At issue in this original proceeding are the following interrogatory and request for production:

> Rudd's First Set of Interrogatories, Interrogatory Number 9: If [MVT] has ever filed or been a party to a lawsuit prior to or since the date of the collision, please state the nature of the suit, cause number, style and the name of the Court in which the lawsuit was pending and provide a brief explanation of the suit's disposition.
>
> Response: [MVT] objects to this interrogatory as overly broad, not reasonably limited in time or scope, fishing, harassing, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.
>
> Rudd's Second Requests for Production, Request for Production Number 1: The cellular telephone(s) in use and/or in Robert Stowbridge's possession at the time of the July 12, 2021 crash made the basis of this suit. The cellular telephone(s) should be produced to Flashback Data, 4029 South Capital of Texas Highway, Suite 224, Austin, Texas 78704.
>
> Flashback Data will examine the phone to specifically look for activity four hours before and around the time of the crash, examine the Call Detail Record (CDR) around the time of the crash and map out the location of the device(s) in the CDR, and Data will forensically analyze the mobile phone for communication and location around the same time as the CDRs.
>
> Response: [MVT and Stowbridge object] to this request as overly broad, unduly burdensome, not reasonably limited in time or scope, harassing, fishing, not reasonably calculated to lead to the discovery of relevant or admissible evidence, and it seeks private and personal information that is unrelated to the subject lawsuit. *State v. Granville*, 423 S.W.3d 399, 405 fn l6 (Tex. Crim. App. 2014) (a cellphone owner has a subjective, reasonable and legitimate expectation of privacy in their cell phone); *see also In re Padilla*, 2018 WL 4087733 (Tex. App.—Austin 2018, orig. proceeding).

Contending MVT and Stowbridge's responses were insufficient, Rudd moved to compel the two to "completely respond" to, among other things, the above interrogatory and request for production. MVT filed a response, and the trial court set a hearing.

During the hearing, MVT and Stowbridge re-urged their written objections. In reference to Rudd's request for information about all lawsuits in MVT's history, MVT averred the request was overly broad, harassing, and not calculated to lead to the discovery of admissible evidence. Rudd responded by offering to agree to limit the request to a duration of ten years and to lawsuits that were filed against MVT for personal injury matters involving truck collisions. The trial court sustained MVT's objections in part, ordering MVT to produce information for lawsuits involving personal injury matters involving truck wrecks from July 12, 2017, to the present.

Next, the trial court addressed Rudd's request for access to Stowbridge's cell phone to retrieve and review data before and around the time of the collision. Rudd argued the cell phone data was relevant to his claims because a video obtained in discovery indicated Stowbridge was using his cell phone at the time of the collision. Stowbridge responded that his cell phone was subject to privacy protections and that Rudd's written request was overly broad. Stowbridge's argument prompted the following exchange between his counsel and the trial court:

| | |
|---|---|
| Trial Court: | I am not persuaded by anymore privacy interests post-*Dobbs*. Women don't have privacy over their uterus. I am not—what else do you have besides privacy? I am not persuaded post-*Dobbs* with any privacy arguments. |
| Counsel: | Sure, Judge. And in our response to the motion to compel— |
| Trial Court: | Which page? |
| Counsel: | Page 2. It talks about how the Texas Rules of Civil Procedure defines the general scope as anything that is unprivileged that is relevant to the subject acts. Certainly there is going to be privacy issues with the cell phone. I know the court has spoken on that, but — |

| | |
|---|---|
| Trial Court: | It is not me. It is the Supreme Court has [sic] spoken on it. Right. I am just the trial court. The Supreme Court has spoken on it. |
| Counsel: | And if you look at [the motion], Judge, we do indicate and we cite the case there of *State v. Granville*. |
| Trial Court: | Is that — was decided post-*Dobbs*? |
| Counsel: | Postop? |
| Trial Court: | Post-*Dobbs*, D-o-b-b-s. |
| Counsel: | No, it was not. |
| Trial Court: | Okay, what's next? |
| Counsel: | Well, again this specifically goes into a cell phone. And this basically, again, says the court generally found that all of these items, including a cell phone, has legitimate and reasonable privacy interest for an individual. So, again, to have Mr. Stowbridge turn over his phone to where phone calls, context of text messages, photographs, medical records, again, it would be violating his privacy. |
| Trial Court: | Okay. I don't find the argument of privacy on a cell phone persuasive once the Supreme Court has decided that a woman has no privacy interest in her uterus. Anything else, sir? |
| Counsel: | Nothing else, Judge. |

After the hearing, the trial court signed an order overruling MVT and Stowbridge's objections and compelling the responses. MVT and Stowbridge filed a joint mandamus petition and requested emergency relief, which we granted in part, staying the enforcement of the trial court's order compelling responses to the interrogatory and request for production at issue. We requested responses from the trial court and Rudd. Only Rudd filed a response, to which MVT and Stowbridge replied.

**CIVIL DISCOVERY**

*Standard of Review and Applicable Law*

Mandamus is an extraordinary remedy that is not available as a matter of right. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (orig. proceeding). For mandamus relief to be appropriate, a relator must show the trial court committed a clear abuse of discretion and that it has no adequate remedy by appeal. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). "A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). A relator lacks "an adequate appellate remedy from orders compelling discovery beyond what the rules allow." *In re Millwork*, 631 S.W.3d 706, 714 (Tex. 2021) (orig. proceeding) (per curiam).

Discovery in Texas courts is liberally construed with the intention that cases are decided based on the facts revealed, not concealed. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247–48 (Tex. 2021) (orig. proceeding); TEX. R. CIV. P. 192.3(a). "[T]he general scope of discovery [is] any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is reasonably calculated to lead to the discovery of admissible evidence." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam); TEX. R. CIV. P. 192.3(a). "Texas trial court judges are entrusted with guided discretion . . . to flexibly determine what is discoverable in civil litigation." *In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d 635, 651 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding). The breadth and scope of discovery largely rests within the trial court's discretion. *Ginsberg v. Fifth App. Ct.*, 686 S.W.2d 105, 108 (Tex. 1985) (orig. proceeding). In the exercise of

its discretion, after notice and hearing, a trial court may compel responses or impose sanctions in furtherance of compliance with proper discovery. *See* TEX. R. CIV. P. 215.1, 215.3.

## ANALYSIS

### *MVT's Prior Lawsuits*

Addressing Rudd's request to produce information about prior lawsuits, MVT argues the trial court's order requiring production dating back to July 12, 2017, constitutes an overbroad fishing expedition. MVT additionally contends any lawsuit information containing third parties is irrelevant to the case at bar. Rudd states in his response that he does not take a position on this issue; however, in essence, he claims this issue is moot because he no longer seeks the information sought by his discovery request. Fundamentally, Rudd concludes this issue is moot because after MVT filed its mandamus petition, he sent a proposed Rule 11 agreement to MVT withdrawing his request. Because "[w]e lack jurisdiction to resolve moot controversies," we address Rudd's mootness contention first. *In re Baja Freight, Ltd*., No. 04-23-01010-CV, 2023 WL 8609284, at *2 (Tex. App.—San Antonio Dec. 13, 2023, orig. proceeding) (mem. op.).

### A. Mootness

A discovery dispute will become moot if "a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal." *In re Kellogg Brown & Root, Inc*., 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Mootness, however, cannot be used as a gamesmanship tactic to avoid imminent appellate review. *In re Contract Freighters, Inc*., 646 S.W.3d 810, 813–14 (Tex. 2022) (orig. proceeding) (per curiam). In *Contract Freighters*, real parties in interest withdrew their discovery request after relators filed their mandamus petition, and the Texas Supreme Court requested a response. *Id.* at 13. Real parties moved to dismiss relators' petition, arguing it was now moot because the complained of discovery request was withdrawn. *Id.* The Court rejected real parties' argument, opining there must be "sufficient

certainty that [real parties] would not refile the same or similar requests if the Court" were to dismiss the mandamus petition. *Id.* at 814. The Court provided examples that would be "enforceable assurances" such as a Rule 11 agreement, binding covenant, or anything else that provides sufficient certainty that a party would not refile the same or similar requests upon a reviewing court's dismissal. *Id.*; *see also* TEX. R. CIV. P. 11. Because there was no enforceable assurance against a repetitive discovery request if the Court were to dismiss the mandamus petition, the Court held it had jurisdiction to review the merits of real parties' original discovery request. *Contract Freighters*, 646 S.W.3d at 814.

Here, while Rudd posits he submitted a proposed Rule 11 agreement to MVT withdrawing his discovery request, there is no evidence in the record of this agreement. Moreover, the record is devoid of any enforceable assurance that Rudd will not file the same or similar request if we were to dismiss this portion of MVT's mandamus petition. *See id.* Accordingly, we conclude this issue is not moot. Therefore, we have jurisdiction to review the merits of Rudd's discovery request to MVT and the trial court's order compelling a response.

### B. Merits of the Request and MVT's Objections

A discovery request is overbroad when it seeks irrelevant information. *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022) (orig. proceeding) (per curiam); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding) ("[O]verbroad requests encompassing time periods, products, or activities beyond those at issue in the case—in other words, matters of questionable relevancy to the case at hand."). "A reasonably tailored discovery request is not overbroad merely because it may include some information of doubtful relevance[.]" *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam). Evidence is relevant if it tends to make a consequential fact "more or less probable than it would be without the evidence." *UPS Ground Freight*, 646 S.W.3d at 832; TEX. R. EVID. 401. "What is

'relevant to the subject matter' is broadly construed, but there are limits." *UPS Ground Freight*, 646 S.W.3d at 832. "Accordingly, a central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *Id*. Additionally, as the Texas Supreme Court "has repeatedly emphasized," "discovery may not be used as a fishing expedition." *Id.*

Here, Rudd makes no effort to justify why lawsuit information involving MVT from July 12, 2017, to the present advances his claims against MVT. *See Contract Freighters*, 646 S.W.3d at 814–15 (holding discovery order requiring the production of records for every rear-end accident for a five-year period were overbroad and constituted a fishing expedition); *In re J & GK Prop. - CKJ N. Tex. Series LLC*, No. 03-23-00426-CV, 2023 WL 5597361, at *5–6 (Tex. App.—Austin Aug. 29, 2023, orig. proceeding) (mem op.) (rejecting claim that discovery of other lawsuit information for a period of seven and a half years was relevant where the requests sought information not reasonably limited in scope). Likewise, Rudd did not provide analysis in his motion to compel, during the hearing on his motion, or in his mandamus response purporting to establish that his request for MVT's prior lawsuit information is refined in time, location, and scope as to be within the bounds of permissible discovery. *Contract Freighters*, 646 S.W.3d at 814–15; *Alford Chevrolet-Geo*, 997 S.W.2d at 181; *J & GK Prop. - CKJ N. Tex.*, 2023 WL 5597361, at *5–6. In short, the trial court's order compelling MVT to produce information for all personal injury matters involving truck wrecks from July 12, 2017 to the present is overbroad. *See id.* Therefore, the trial court abused its discretion by compelling MVT to respond to this request.

*Production and Access to Stowbridge's Cell Phone*

Stowbridge argues the trial court's order requiring him to provide unfettered access to his cell phone amounts to an abuse of discretion because the order requires production "far in excess of anything that might be relevant to this case." In short, Stowbridge contends the order's extensive

access to his cell phone is an overbroad fishing expedition that does not provide consideration for his private data stored in his cell phone. In response, Rudd poses two arguments. First, he contends this issue is not ripe for appellate review because the trial court's order requires the parties to confer on the issue—and if an agreement cannot be reached—only then would the trial court consider whether to compel Stowbridge to produce his cell phone. Second, without conceding ripeness, Rudd asserts he is "plainly entitled" to Stowbridge's cell phone data under Texas jurisprudence. Like mootness, we have no jurisdiction to address issues that are not yet ripe. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *In re Stevens*, No. 04-20-00046-CV, 2020 WL 557069, at *1 (Tex. App.—San Antonio Feb. 5, 2020, orig. proceeding) (mem. op.) (opining "[a]n opinion issued in a case that is not ripe is an advisory opinion," and "[w]e have no jurisdiction to issue an advisory opinion."). Therefore, we address Rudd's ripeness argument first.

### A. Ripeness

In determining whether an issue is ripe, "[t]he central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Abbott v. Mex. Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 708 (Tex. 2022) (quoting *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex. 2001)). "Ripeness concerns not only whether a court *can* act—whether it has jurisdiction—but prudentially, whether it *should*." *Perry*, 66 S.W.3d at 249–50 (emphasis in original).

Rudd avers Stowbridge's mandamus relief is premature because the trial court ordered the parties to confer on the contents of the data to be produced and possible safeguards to protect Stowbridge's privacy. Only if an agreement cannot be reached, Rudd opines, will the trial court consider compelling Stowbridge to produce his cell phone for data extraction with or without privacy considerations. The pertinent portion of the trial court's order recites:

> [Stowbridge and MVT's] objections are overruled as to Request 1 . . . . With regard to Request 1, Counsel for the parties shall confer on the logistics of the production of the cell phone. If an agreement cannot be reached, the [trial court] will consider the issue at a contested Motion to Enter hearing. [Rudd's] forensic examiner, Flashback Data, LLC, must return Robert Stowbridge's cell phone to counsel for Robert Stowbridge within 48 hours of receipt of Robert Stowbridge's cell phone.

The plain language of the trial court's order requires Stowbridge to produce his cell phone to Rudd's expert for the purpose of extracting data, which stems from Rudd's discovery request. Rudd urges that "logistics" within the context of the order requires the parties to confer about privacy considerations for Stowbridge prior to production. "Logistics" is not defined in the trial court's order and Rudd does not provide us with any authority for his proposition. One dictionary defines logistics as "the handling of the details of an operation." *Logistics,* MERRIAM–WEBSTER, https://www.merriam-webster.com/dictionary/logistics (last visited February 1, 2024). Finding this definition reasonable within the context of the trial court's order, the order requires the parties' counsel to confer on the details—such as a time and place—to produce Stowbridge's cell phone but undoubtedly requires production without further conferral between the parties. Therefore, we conclude the merits of Stowbridge's contentions are ripe for our review.

### B. Cellphone Data

Stowbridge forwards two arguments for the proposition that the trial court erred by requiring him to produce his cell phone. First, Stowbridge contends the United States Supreme Court decision in *Dobbs v. Jackson Women's Health Org.*—which the trial court found as the basis for overruling his privacy argument during the hearing—has no bearing on the privacy interest in one's cell phone. 597 U.S. 215, 290 (2022). Because the trial court abused its discretion by overruling his privacy claim on this basis, Stowbridge concludes, he is entitled to mandamus relief. Second, Stowbridge argues the pertinent request is overbroad and not narrowly tailored to ensure the information captured by Rudd's expert is relevant to the lawsuit and protects his privacy rights.

The parties assert that *Dobbs* is inapplicable to this discovery dispute, and we agree. The Supreme Court explicitly stated, "to ensure that our decision is not misunderstood or mischaracterized, we emphasize that our decision concerns the constitutional right to abortion and no other right." *Id.* "Nothing in this opinion should be understood to cast doubt on precedents that do not concern abortion." *Id.* Therefore, *Dobbs* has no applicability to the privacy concerns in Texas litigation regarding the discovery of cell phone data in a personal injury suit stemming from a vehicle collision. *Id.* The trial court's reasoning is fundamentally wrong. Nevertheless, "[b]ecause a trial court cannot abuse its discretion in reaching a correct result for the wrong reasons, we will uphold the trial court's order on any ground supported by the record." *In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). For this reason, we move on to consider whether there is a supportable ground in the record for overruling Stowbridge's assertion of privacy interests and discovery objections.

In the context of cell phone data, Texas jurisprudence is quickly developing to match ever-evolving technological advances. Recently, in *In re Kuraray Am., Inc.*, the Texas Supreme Court established guiding principles a trial court should consider when weighing whether and to what extent the production of cell phone data is within the confines of permissible discovery. 656 S.W.3d 137, 142 (Tex. 2022) (orig. proceeding) (per curiam).

> First, to be entitled to production of cell-phone data, the party seeking it must allege or provide some evidence of cell-phone use by the person whose data is sought at a time when it could have been a contributing cause of the incident on which the claim is based. If the party seeking the discovery satisfies this initial burden, the trial court may order production of cell-phone data, provided its temporal scope is tailored to encompass only the period in which cell-phone use could have contributed to the incident. In other words, a trial court may not, at this stage, order production of a person's cell-phone data for a time at which his use of a cell phone could not have been a contributing cause of the incident. Only if this initial production indicates that cell-phone use could have contributed to the incident may

a trial court consider whether additional discovery regarding cell-phone use beyond that timeframe may be relevant.

*Id.*

In Rudd's live petition, he alleges Stowbridge acted negligently by, among other things, "driving distracted while using his cell phone." During the hearing on his motion to compel, Rudd represented to the trial court that an in-cab video from Stowbridge's tractor-trailer shows Stowbridge using a cell phone at the time of the collision. Given Rudd's live petition and that Stowbridge does not dispute the existence of a video—although he may dispute the contents of the video—the trial court was within its discretion to order Stowbridge to produce his cell phone data provided the timeframe of the production is temporal in scope and is tailored to encompass only the period in which the cell phone use could have contributed to the collision. *Id.*

Although Rudd may be entitled to discover Stowbridge's cell phone data for some period of time, the trial court's order is not limited in temporal scope to be tailored to encompass only the time period in which Stowbridge's cell phone use could have contributed to the collision. *See id.* Rudd's mandamus response and motion to compel fail to establish why he needs Stowbridge's cell phone data four hours before the collision to prosecute his lawsuit. *See CSX*, 124 S.W.3d at 153 (concluding discovery request including time period unattached to lawsuit was overbroad to constitute a fishing expedition).

Further, the trial court's order fails to encompass the type of privacy protections necessary to ensure Stowbridge's privacy interests are protected from unnecessary disclosure. *In re Huang*, No. 01-22-00594-CV, 2023 WL 8262837, at *5 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, orig. proceeding) (mem. op.) (granting mandamus relief where the trial court failed to provide protocols "or specific guidelines to protect personal, confidential, or sensitive data by employing the least intrusive means for obtaining the data."); *In re UV Logistics, LLC*, No. 12-20-00196-CV,

2021 WL 306205, at *4 (Tex. App.—Tyler Jan. 29, 2021, orig. proceeding) (mem. op.) (granting mandamus relief where the trial court's order was not sufficiently limited nor narrowly tailored and required relators "to produce [relators'] Facebook account ESI, Google account ESI, and cell phone, without a subject matter limitation."); *see also In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 157 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) ("As cell phones, smart phones, and similar mobile devices are personal property, it follows that the owners of such devices generally enjoy the full panoply of 'fundamental' property rights recognized by Texas law."); *see, e.g., In re Honza*, 242 S.W.3d 578, 584 (Tex. App.—Waco 2008, orig. proceeding) (holding trial court's order protected owner of computer data interest by implementing privacy and discovery safeguards by allowing the owner to review the documents before producing and withhold irrelevant or privileged documents).

We conclude, the trial court abused its discretion when it ordered the production of Stowbridge's cell phone data untethered to a temporal period of time in which Stowbridge's cell phone use could have contributed to the collision. The trial court's order also fails to incorporate adequate protections for Stowbridge's privacy interests.

## CONCLUSION

We conditionally grant mandamus relief for the reasons stated in this opinion.

Lori I. Valenzuela, Justice